# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Federal Insurance Company, as subrogee of HealthPartners, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Steris Corporation and Siemens Canada Ltd., <br><br> Defendant. | Case No. 11-cv-00078 (SRN/AJB) <br><br><br> **MEMORANDUM OPINION AND ORDER** |

Larry R. Eaton, Cozen O'Connor, 333 West Wacker Drive, Suite 1900, Chicago, IL 60606 and Patrick H. O'Neill, Jr. and Stephen M. Warner, O'Neill & Murphy, LLP, 332 Minnesota Street, Suite W2600, St. Paul, MN 55101, for Plaintiff.

Jessica A. Megorden, Nicholas H. Jakobe, and Patrick D. Reilly, Erstad & Riemer, PA, 8009 - 34th Avenue South, Suite 200, Minneapolis, MN 55425-4409, for Defendant Steris Corporation.

Alana K. Bassin and Patrick L. Arneson, Bowman & Brooke LLP, 150 South 5th Street, Suite 3000, Minneapolis, MN 55402 and John T. Richmond , Jr., Husch Blackwell LLP, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105, for Defendant Siemens Canada Limited.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter before the Court is Defendant Siemens Canada Limited's Renewed Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. No. 42.) The Court grants the Motion for the reasons discussed below.

1

## II. BACKGROUND

On February 10, 2009, property owned by HealthPartners, Inc. ("HealthPartners"), and insured by Plaintiff Federal Insurance Company ("Federal Insurance") was damaged in a fire. (Pl.'s Mem. in Opp'n to Def. Siemens Canada Ltd.'s Renewed Mot. to Dismiss for Lack of Personal Jurisdiction, Doc. No. 48 ("Pl.'s Opp'n Mem."), at p. 1.) Plaintiff investigated the fire and alleges that it was caused by a defective electrical component manufactured by Defendant Siemens Canada Ltd. ("Siemens Canada"). (Def. Steris Corp.'s Mem. of Law in Opp'n to Siemens Canada Ltd.'s Mot. to Dismiss for Lack of Personal Jurisdiction, Doc. No. 47 ("Def. Steris' Opp'n Mem."), at p. 1; Compl., Doc. No. 1, ¶ 8.). The electrical component part had been incorporated into a sterilizing/disinfecting washer manufactured by Defendant Steris Corporation ("Steris"). (Compl, Doc. No. 1, ¶ 9.) Federal Insurance compensated HealthPartners for the property damage and then brought this action against Siemens Canada and Steris to recover its losses. (Pl.'s Opp'n Mem. at p. 1.)

Siemens Canada was chartered in Canada in 1912 and "sells countless electrical products" to distributors. (Mem. in Supp. of Def. Siemens Canada Ltd.'s Renewed Mot. to Dismiss for Lack of Personal Jurisdiction, Doc. No. 44 ("Def. Siemens Canada's Mem."), at p. 2). The distributors make the products available to "a limitless number and variety of end users." (Id.) Siemens Canada hypothesizes, and the other parties do not dispute, that it sold the electrical component at issue to Franklin Empire, Inc. ("Franklin"), a Canadian company, which then sold it to Steris to incorporate in its sterilizing/disinfecting washer. (Id.) HealthPartners then purchased the sterilizing/disinfecting washer from Steris. (Id.)

Siemens Canada's principal place of business is in Burlington, Ontario. (Claude Lemieux Decl. in Supp. of Def. Siemens Canada Ltd.'s Mot. to Dismiss, Doc. No. 27 ("Lemieux Decl."), at ¶ 3.) It only has the rights to sell products manufactured by other Siemens entities within Canada. (Def. Siemens Canada's Mem. at p. 3.) It is not incorporated in Minnesota nor does it have an office, employees, property, or an ability to manufacture products in this jurisdiction. (Lemieux Decl. ¶¶ 4–8.) The only product Siemens Canada has shipped to locations in the United States comes from a single line of products known as "Flender geared motors." (Def. Siemens Canada's Mem. at Ex. A, Interrog. No. 8.) These products were sold in Minnesota 13 times in the first six months of 2011, out of a total of 63,487 transactions during that same time. (Id.) The total sales to Minnesota companies accounted for $128,866.70 (Canadian) out of $2.3 billion (Canadian) in the last fiscal year—or approximately 0.0056%. (Id.)

On March 29, 2011, Siemens Canada filed a Motion to Dismiss the Complaint for lack of personal jurisdiction. (Doc. No. 9.) The Court held a hearing on August 25, 2011 and then issued an Order dated August 26, 2011 denying Siemens Canada's Motion without prejudice and allowing Federal Insurance and Steris to conduct limited discovery related to personal jurisdiction. (Doc. No. 28.)

Federal Insurance subsequently served interrogatories and document requests on Siemens Canada, but Steris did not. (Def. Siemens Canada's Mem. at p. 3.) The parties discussed the scope of Federal Insurance's discovery requests and Chief Magistrate Judge Boylan conducted a telephone conference about them on October 14, 2011. (Doc. No. 30.) On November 8, 2011, Siemens Canada responded to interrogatories and document requests

served by Federal Insurance. (Def. Siemens Canada's Mem. at p. 4, Exs. A–B.) On June 19, 2012, Siemens Canada renewed its Motion to Dismiss for lack of personal jurisdiction. (Doc. No. 42.)

## III. DISCUSSION

### A. Personal Jurisdiction

The plaintiff has the burden of establishing a prima facie case of personal jurisdiction over the defendant. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006). A plaintiff "must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state." Dever v. Hentzen Coating, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (citation and internal quotations omitted). The Court views the evidence in the light most favorable to the plaintiff and all factual disputes must be resolved in the plaintiff's favor. Id. at 1076.

The test for deciding whether a federal court may exercise personal jurisdiction over a civil defendant is well settled. First, the court must determine whether the forum state's long-arm statute subjects the defendant to jurisdiction. Pangaea, Inc. v. The Flying Burrito, LLC, 647 F.3d 741, 745 (8th Cir. 2011). Second, the exercise of jurisdiction must comport with the due process requirements of the Fifth Amendment. (Id.) Where the relevant state long-arm statute extends as far as due process allows, as is the case in Minnesota, the two inquiries are codeterminate. See Minn. Stat. § 543.19; accord Woodcock, 444 F.3d at 955.

To satisfy the due process clause, a defendant must have "minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)

(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The defendant's contacts with the forum state generally must not arise due to mere fortuity, but rather because the defendant has "purposefully avail[ed]" itself of the privilege of conducting activities in the state. Hanson v. Denckla, 357 U.S. 235, 253 (1958); accord Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996).

"[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." J. McIntyre Mach., Ltd. v. Nicastro, __ U.S. __ , 131 S. Ct. 2780, 2787 (2011) (plurality opinion). When a defendant "purposefully avails itself of the privilege of conducting activities within" a state, Hanson, 357 U.S. at 253, a state's exercise of jurisdiction over that defendant is proper "'in a suit arising out of or related to the defendant's contacts with the forum.'" J. McIntyre, 131 S. Ct. at 2788 (quoting Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414 (1984)). "The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct." Id. at 2789.

"The minimum contacts necessary for due process may be the basis for either 'general' or 'specific' jurisdiction.'" Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted). General jurisdiction "refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1103 (8th Cir. 1996).

General jurisdiction requires an examination of whether the defendant's contacts with the forum are "continuous and systematic." See Helicopteros, 466 U.S. at 414–15 & n.9.

Specific jurisdiction may be conferred when a defendant, through its contacts with the forum, purposefully avails itself of the privilege of conducting business in the forum "in a suit arising out of or related to the defendant's contacts with the forum." J. McIntyre, 131 S. Ct. at 2787–88 (plurality opinion) (quoting Helicopteros, 466 U.S. at 414 n.8); see also Dever, 380 F.3d at 1073. The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citation omitted). "Jurisdiction is proper, however, where the contacts proximately result from action by the defendant himself that create a 'substantial connection' with the forum state." Id. (emphasis in original and citation omitted).

This case involves only a question of specific jurisdiction, as Federal Insurance and Steris apparently concede that Siemens Canada's alleged contacts with Minnesota were neither continuous nor systematic. (Pl.'s Opp'n Mem. at p. 7.) Specific jurisdiction may be established where the claim "aris[es] out of" or "relates to" a defendant's contacts with the forum. See J. McIntyre, 131 S. Ct. at 2787–88 (plurality opinion). To evaluate the sufficiency of a defendant's contacts, the court considers five factors, affording the first three primary importance: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the

convenience of the parties. Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996).

### B. Stream of Commerce Theory

In cases involving products liability, courts often analyze whether the Plaintiff has met its burden to show specific jurisdiction under a stream of commerce theory. In World-Wide Volkswagen Corp. v. Woodson, the Supreme Court recognized:

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

444 U.S. 286, 297 (1980). In other words, personal jurisdiction may be exercised "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Id. at 297–98.

The proper application of the stream of commerce theory is evolving in the Supreme Court. See AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1362 (Fed. Cir. Aug. 24, 2012). The Court addressed this issue in Asahi Metal Industry Co. v. Superior Court of California, Solano County, 480 U.S. 102 (1987), and more recently in J. McIntyre, 131 S. Ct. at 2785. In both cases, the Court considered whether placing a product into the stream of commerce that results in harm in a specific state is sufficient to establish specific jurisdiction over the defendant.

In Asahi, a defective motorcycle tire injured two Californians and they sued the Taiwanese manufacturer. 480 U.S. at 105–06. The Taiwanese manufacturer filed a cross-

claim for indemnity against a Japanese company that had manufactured a part in the tire. Id. The Japanese manufacturer knew that the Taiwanese manufacturer had used its part in tires worldwide, including in California. Id. at 107. The Japanese manufacturer, however, did not do business in California, had no agents, office, employees or property there, did not advertise or solicit business in that state, and had no control over the distribution network that brought its products to California. Id. at 112.

While the Court unanimously determined that California lack personal jurisdiction over the Japanese manufacturer, the justices were divided on the application of the stream of commerce theory. Justice Brennan, joined by three other Justices, relied on considerations of foreseeability. Justice Brennan would have found purposeful availment whenever the manufacturer "is aware that the final product is being marketed in the forum State," because the possibility of a lawsuit there cannot come as a surprise. Id. at 117 (opinion concurring in part and concurring in the judgment).

Justice O'Connor, joined by three other Justices, rejected Justice Brennan's approach. In their view, mere foreseeability that the "stream of commerce may or will sweep the product into the forum State" is insufficient. Id. at 112. Justice O'Connor wrote:

> The substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by <u>an action of the defendant purposefully directed toward the forum State</u>. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state.

Id. (citations and internal quotations omitted , emphasis in original). A plurality of the Court found that the Japanese manufacturer's mere placement of the tire part within the stream of commerce did not constitute an act of purposeful availment towards the forum

state. Id. at 108, 116; accord Falkirk Mining Co. v. Japan Steel Work, Ltd., 906 F.2d 369, 375 (8th Cir. 1990). Since there was no majority opinion, however, neither Justice Brennan's nor Justice O'Connor's test prevailed as the applicable precedent.

In J. McIntyre, the Court revisited questions left open in Asahi. J. McIntyre was a products liability suit where the New Jersey plaintiff had injured himself while using a machine manufactured by a British company. 131 S. Ct. at 2786. The British manufacturer contested personal jurisdiction because it had no office in New Jersey, paid no taxes there, and did not advertise or have any employees in the state. See id. However, the plaintiff argued that jurisdiction existed because the British company's distributor sold its machines in the United States, its officials attended trade shows in the country, and at least four machines had been sent to New Jersey. Id. at 2790.

The Court declined to resolve the Asahi split in J. McIntyre. In a plurality opinion, Justice Kennedy acknowledged the imprecision of the metaphor "stream of commerce," stating that "[i]t refers to the movement of goods from manufacturers through distributors to consumers, yet beyond that descriptive purpose its meaning is far from exact." J. McIntyre, 131 S. Ct. at 2788. In "products-liability cases . . . it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice.'" Id. at 2787. A "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." Id. at 2788. The plurality concluded that the British manufacturer engaged in

9

no "activities in New Jersey that reveal an intent to invoke or benefit from the protection of its laws." Id. at 2791.

Justice Breyer, joined by Justice Alito, wrote a concurring opinion. The concurrence rejected an approach that "would permit every State to assert jurisdiction in a products-liability suit against any domestic manufacturer who sells its products . . . to a national distributor, no matter how large or small the manufacturer, no matter how distant the forum, and no matter how few the number of items that end up in the particular forum at issue." Id. at 2793. Nevertheless, Justice Breyer declined to endorse revisiting the jurisdictional standard at all, writing:

> [O]n the record presented here, resolving this case requires no more than adhering to our precedents . . . . I would not go further. Because the incident at issue in this case does not implicate modern concerns, and because the factual record leaves many open questions, this is an unsuitable vehicle for making broad pronouncements that refashion basic jurisdictional rules.

Id. at 2792–93. According to Justice Breyer's concurrence "the Supreme Court's framework applying the stream-of-commerce theory—including the conflicting articulations of that theory in Asahi—had not changed, and . . . the defendant's activities in McIntyre failed to establish personal jurisdiction under any articulation of that theory." Nuvoton Tech., 689 F.3d at 1363.

Because J. McIntyre did not produce a majority opinion, the Court must follow the narrowest holding among the plurality opinion in that case. Marks v. United States, 430 U.S. 188, 193 (1977). The "narrowest holding is that which can be distilled from Justice Breyer's concurrence—that the law remains the same after McIntyre." Nuvoton Tech., 689 F.3d at 1363.

### C. Eighth Circuit Precedent

The Court proceeds on the premise that J. McIntyre did not change the Supreme Court's jurisdictional framework and thus applies Eighth Circuit case law interpreting the Supreme Court's existing stream of commerce precedent. In Falkirk, a component manufacturer sold a single part to another company that in turn sold its final product in the forum state. 906 F.2d at 371–72.[1] No evidence indicated that the defendant either knew or should have known that its component part would end up in the forum state, nor was there evidence that the defendant had availed itself of the benefits of the laws of the forum state. Id. at 375. The court held, based on Asahi, that the manufacturer's "placement of a product into the stream of commerce, without more, does not constitute an act of the [manufacturer] purposefully directed toward the forum State." Id. at 376 (citing Asahi, 480 U.S. at 112 (plurality)).

Additionally, in Barone v. Rich Bros. Interstate Display Fireworks Co., a Nebraska plaintiff was injured when setting up a firework display. 25 F.3d 610, 610–11 (8th Cir. 1994). The plaintiff and his employer sued the distributor and two firework manufacturers, one of which was Japanese. Id. The Japanese manufacturer moved to dismiss for lack of personal jurisdiction because it had no office, agent, or distributor in Nebraska and did not advertise or send any of its products there. Id. The Japanese manufacturer, however, had utilized nine American distributors located in six states across the country, including South

---

[1] The defendant had one other contact with the forum state, but it was unrelated to the dispute and therefore irrelevant to the consideration of whether the forum state could exercise specific jurisdiction. See Falkirk, 906 F.2d at 374.

Dakota. Id. Sixteen percent of the fireworks purchased from its South Dakota distributor were eventually resold into Nebraska. Id.

When analyzing the stream of commerce theory of personal jurisdiction, the Eighth Circuit discussed Asahi and stated, "it appears that five justices agreed that continuous placement of a significant number of products into the stream of commerce with knowledge that the product would be distributed into the forum state represents sufficient minimum contacts to satisfy due process." Id. at 614. The court also said that Asahi appeared to follow the Supreme Court's decision in World-Wide Volkswagen that "when a manufacturer or distributor attempts to serve a market 'directly or indirectly . . . , it is not unreasonable to subject it to suit in [that market] if its allegedly defective merchandise has there been the source of the injury to its owner or to others." Id. (citation omitted). The court determined that personal jurisdiction existed over the Japanese manufacturer because it chose its distributors in "an effort to reach much of the country" and it placed "its products in the stream of commerce throughout the Midwest." Id. at 613. The court held that the Japanese manufacturer "reaped the benefits of its network of distributors, and it is only reasonable and just that it should now be held accountable in [Nebraska]." Id. at 615.[2]

In Vandelune v. 4B Elevator Components Unlimited, an individual was injured in a grain dust explosion while working in Iowa. 148 F.3d 943, 945 (8th Cir. 1998).

---

[2] Justice Ginsburg dissented in J. McIntyre and included an appendix of "[i]llustrative cases," including Barone, that uphold the "exercise of personal jurisdiction over an . . . out of state corporation, through a distributor, [which] targeted a national market, including any and all States." Id. at 2804. Whether Barone is still good law after J. McIntyre is not clear, but is not of import here—this Court finds Barone distinguishable from the case at bar.

12

Contending that a faulty monitor caused the injury, the plaintiff filed a products liability suit against the British manufacturer and its independent distributor located in Peoria, Illinois. Id. The court stated that the Supreme Court's decision in Asahi left as "an open question" the issue of "whether introducing products into the 'stream of commerce' satisfies the due process requirement of minimum contacts in a products liability case." Id. Citing Burger King, 471 U.S. at 475, the court concluded that because the British manufacturer "pour[ed] its products" into a regional distributor with the expectation that the distribution would penetrate a discrete, multi-state trade area, the British manufacturer "purposefully reaped the benefits of the laws of each State in that trade area for due process purposes." Id. at 948 (citation omitted). The British manufacturer created the monitor for the United States market and the manufacturer attended technical support meetings at the independent distributor's location in Peoria, Illinois. Id. Further, the independent distributor sold monitors to Iowa. Id. On this record, the court held that these sales were not "attenuated, random, or fortuitous" contacts with Iowa and determined the court had personal jurisdiction. Id.

### D. Siemens Canada's Contacts With Minnesota

Siemens Canada contends that it maintained no contacts with Minnesota that would justify the exercise of specific personal jurisdiction. It asserts that no specific jurisdiction can be established because this litigation did not result from injuries arising out of or related to Siemens Canada's operations. It only uses distributors in Canada to sell its products and there is no evidence that it tailors any of its business in an effort to market products to the United States. Since it is only licensed by other Siemens entities to sell products within

13

Canada, Siemens Canada argues that it has no intent to sell products in the United States. Moreover, there is no evidence that Siemens Canada has sold or marketed the electrical component at issue in this case to any entity in Minnesota. Federal Insurance and Steris respond that Siemens Canada is part of a worldwide organization that advertises its products throughout the United States and Minnesota. According to Federal Insurance and Steris, it is subject to personal jurisdiction under the stream of commerce theory.

As in <u>Asahi</u>, <u>Falkirk</u>, and <u>J. McIntyre</u>, the Court concludes that it lacks personal jurisdiction over Siemens Canada. Siemens Canada is a foreign manufacturer with a distribution system established in a foreign country. Siemens Canada is only licensed to sell products within Canada. The record reveals only one of its electrical component parts at issue in this case ended up in Minnesota. Federal Insurance and Steris have not alleged that Siemens Canada has an office in Minnesota, paid taxes in the state, or owns property here. There has been no allegation that Siemens Canada advertised in, sent employees to, entered into any contracts within, or transacted business in Minnesota.[3] Moreover, Federal Insurance and Steris have not alleged that Siemens Canada committed a tortious act in Minnesota. Federal Insurance and Steris do not even allege that Siemens Canada knew that its electrical component product at issue in this case would be incorporated into another

---

[3] Steris argues that the Court should find personal jurisdiction over Siemens Canada because Siemens Canada advertises in Minnesota and holds promotional functions at Target Field. (Def. Steris Opp'n Mem. at p. 7.) In support of this claim, Steris cites a copy of an article that it attached to its brief as Exhibit A. (Doc. No. 22-1.) The first line of the article states that it related to "Siemens Industry, Inc.'s" advertising efforts. (<u>Id.</u>) Siemens Industry, Inc. is a separate legal entity from Siemens Canada and therefore its advertising efforts are not relevant to this motion.

product to be sold in Minnesota. The record demonstrates that Siemens Canada is a foreign manufacturer with a distribution system established in Canada that had an electrical component that ended up in Minnesota on an "attenuated, random, or fortuitous" basis. Based on this record, the Court cannot find that Siemens Canada purposefully availed itself of the benefits and protections of doing business in Minnesota.[4]

Unlike Barone and Vandelune, there is no allegation that Siemens Canada purposefully chose to sell to distributors in Minnesota or poured its products into Minnesota in an effort to penetrate this market. In Barone, the Japanese manufacturer utilized nine American distributors located across the country to penetrate the market. Siemens Canada, however, does not utilize American distributors and is only licensed to sell its products in Canada. Siemens Canada does not market its products to Minnesota, only rarely sends products to this state, and has never sent the electrical component part at issue in this case to Minnesota. There is no evidence that Siemens Canada created the electrical component for

---

[4] Federal Insurance and Steris argue that World-Wide Volkswagen and J. McIntyre are distinguishable from this case because Canada is geographically close to Minnesota. (Pl.'s Mem. at p. 10, 14; Steris Mem. at p. 9.) They contend that unlike World-Wide Volkswagen, where a product was sold only on the east coast and unexpectedly ended up in Oklahoma, it was foreseeable for Siemens Canada's product to end up in Minnesota given its proximity to Canada. (Pl.'s Mem. at p. 14.) They also argue that while the manufacturer in J. McIntyre "shipped its products across an ocean and saw them disbursed, through a distributor, across the United States," Siemens Canada sold its products "through distributors located within a few hundred miles of the site of the injury underlying this action." (Id. at p. 10–11.) Federal Insurance and Steris do not cite a single legal principal that states that geographic proximity is a factor in determining whether personal jurisdiction exists. Moreover, nothing in World-Wide Volkswagen, J. McIntyre, or any other decision determines that personal jurisdiction exists based on how close a foreign manufacturer is to a forum state—rather, the relevant inquiry is the extent of the defendant's contacts with the forum state.

the sterilizing/disinfecting washer for the United States market. Moreover, Siemens Canada only uses Canadian distributors, whereas the British manufacturer in <u>Vandelune</u> used an independent distributor located in Peoria, Illinois. There is also no evidence that employees of Siemens Canada attended support meetings in Minnesota to discuss the electrical component at issue in this case. Therefore, unlike the facts of <u>Vandelune</u> and <u>Barone</u>, the route taken by the electrical component manufactured by Siemens Canada to Minnesota was "attenuated, random, or fortuitous."

In sum, Siemens Canada's actions do not reveal an intent to purposefully avail itself of the protection of Minnesota's laws or otherwise establish sufficient contacts with Minnesota to justify personal jurisdiction. Accordingly, the Court determines that it lacks personal jurisdiction over Siemens Canada.[5]

**IV. ORDER**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Siemens Canada's Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 42) is **GRANTED**.

---

[5] Federal Insurance and Steris request that if the Court determines that it does not have personal jurisdiction over Siemens Canada, it should allow additional jurisdictional discovery. (Pl.'s Opp'n Mem. at pp. 17–19; Steris Opp'n Mem.at pp. 9–10.) After a hearing on Siemens Canada's initial motion to dismiss, the Court granted ninety days for jurisdictional discovery to occur. (Doc. No. 28.) Steris served no discovery requests during that time. (Siemens Canada's Reply Mem. at p. 14.) Siemens Canada served responses to Federal Insurance's discovery requests on November 8, 2011 and since then, no party has raised any complaints regarding its responses. (<u>Id.</u>) Given the lapse of time since Siemens Canada responded to Federal Insurance's discovery requests, and the lack of a record supporting the need for additional jurisdictional discovery, the Court denies the request for additional discovery.

Dated: October 19, 2012         s/Susan Richard Nelson
                                SUSAN RICHARD NELSON
                                United States District Judge